The first case is Micron v. Longhorn, 2023-2007 and 2095. Mr. Breedlove. Thank you, Your Honor. May it please the Court, I'd like to reserve five minutes. What's happening with patent litigation in Idaho is extraordinary. It began with my client and now it's happening to others as well. Micron is in the middle of it all. Patent owners are being hauled into Idaho State Court to retaliate against federal, ongoing patent litigation occurring in other states and at the PTAP. Is this statute an anomaly or is it similar to other state statutes? It's an anomaly in relevant ways. It's similar in a lot of it, but in relevant ways it's an anomaly. It's the only statute, I believe, that specifically refers to a complaint when talking about unlawful conduct. It's unlawful to make a bad faith assertion in a complaint, which would, of course, be a federal complaint. So in that sense, it is an anomaly. And that is a central reason why we are arguing for the preemption on its face portion of our argument. We, of course, also have preemption as applied, but that's a big reason why we have the preemption on its face argument. This is all very interesting and we're happy to hear you use your time as you wish, but do we have jurisdiction? Was this an injunction or effectively an injunction? Well, it was effectively an injunction and it was an order for a bond, which we believe fits squarely within the reasoning of Cohen and subsequent cases involving a bond, where the question was, the central question was the power of the court to order the bond in the first place. In this case, we say it did not because of the unconstitutional nature of the statute. We also contend that this is an injunction, that it is, in fact, Micron in their complaint specifically pleads for equitable relief in joining the bad faith assertion. The bad faith assertion in this case is the complaint filed by Katana for patent infringement. And so they are seeking an injunction to prevent that complaint from going forward. What is the evidence that the amount of the bond is so significant that it prevents Katana's from proceeding? Well, there's no evidence in the record about anyone's ability to pay or ability to find the money or go to a bonding company or anything like that. But there is evidence that what this represents is quadruple the estimated damages of future patent litigation that hasn't occurred yet for Micron. And there is there are statements by both Idaho and the judge indicating that this bond was intended to scare off Katana to deter conduct that would occur immediately. So our contention is that the in your view, how is the amount of the bond calculated? What is it supposed to reflect? I thought it was supposed to reflect the amount of fees that Micron expected to have to pay in order to defend the litigation. And my times four times four. They submitted their argument that the number should be 15 million. The court went with 8 million and they were including fees for the future district court federal infringement litigation to occur in the future. And they were including PTAP proceedings as well. And the judge brought that number down, looking at AIPLA statistics and came up with 2 million and then quadrupled that, which is based on it's under the statute. And it's supposed to be based on a likely finding trouble damages. So exemplary damages. And there was no analysis in the order to support that. But the court just quadrupled what the estimated attorney's fees were. You still have the problem of an interlocutory appeal and you cite Cohen. Yes. And what is this collateral to? How does the collateral order argument work out? The order to pay the bond is collateral to any final judgment that might occur on the merits of the case. Because the central issue is the power of the court to issue the bond in the first place. And so it's made a final determination about that. And so it's collateral. That determination is collateral to the final judgment. Well, it ultimately dealt with on the merits, right? Does it satisfy the three requirements for collateral order? Yes, we believe that it does. It comes within the explanation in Cohen itself. What about the irretrievably lost in the absence of an immediate appeal factor? And please answer Judge Lurie's question, but please emphasize that factor in particular. Okay. So the test is the serious and unsettled question, using Cohen's words, and that's Micron's right to a bond. That's the serious and unsettled question. The district court's authority to order a bond before a patent owner can pursue enforcement is an important issue, separate from the merits, whether it can do that. It's effectively unreviewable because the harm from the bond occurs before final judgment, and it's got hard costs associated with it up front. Especially the way that the district court described the statute, it said that the teeth of the statute is in the bond, that it was intended to scare off a patent owner. What is the evidence that shows that that bond is so difficult that there is no ability to file the suit or something else, I'm trying to find something more concrete here, for why it's prohibitive and thus irretrievably lost, or even an understanding of what the cost is to the company to get the bond? There's no evidence in the record of what the cost would be to get the bond, but we've cited cases in the constitutional context in particular where a bond of even much lower amounts is shown to have such chilling effect that it restricts the right to petition. Was evidence presented in those cases? Not that I'm aware of. I mean, we're talking about very low amounts, but that were still considered to have constitutionally... But you don't know if evidence was presented in that case, right? I mean, I'm just trying to figure out if any evidence was presented in this case so we can understand as an appellate court how it was viewed by the district court. But if no such evidence was presented, it feels like it's a difficult thing for us to wrap our hands around as an appellate court. Well, yes, there was no evidence of the ability or inability to pay a specific bond. But we have evidence that the intent of the bond, and just from its nature being four times fees and at $8 million level, it has a deterrent effect on even good faith patent assertions. The Ninth Circuit recognized... But this doesn't apply in good faith patent assertions, right? I mean, the law itself specifically says it's for bad faith patent assertions. Right. But the bond was issued without any evidence of bad faith assertions. It's totally based on allegations in a complaint, allegations that were shown through evidence submitted by us to be wrong, false and misleading. And the order was issued for the bond with zero evidence. It's purely based on allegations. In fact, the district court said that because we have denied Katana's Rule 12b-6 motion based on the pleadings, it's a lower statutory standard in the Idaho statute. Therefore, we must order the bond. So no evidence of bad faith. What about preemption, which is where you wanted to go to begin with? Right. Preemption, this Court's cases indicate that this standard about, well, was it bad faith or was it good faith, that applies to assertions that occur in the marketplace. When there are assertions made in the marketplace and there's marketplace injury, then you say federal law is... Even though that's normally a state area, state is going to regulate the marketplace. If it's an assertion about patent infringement, then that's going to be preempted unless it was in bad faith. But we're beyond that here. We're talking about the whole point of their case is to challenge our complaint in federal court. The question is not conduct in the marketplace or marketplace injury. This is not just protected by federal law. It's governed by federal law. Because it's purely assertions made in federal court. Just like if you made some statement that was alleged to be defamatory in court, that wouldn't be like a defamatory statement in the marketplace. The Court found a lot of factors for bad faith. Demand letter without conducting an adequate analysis. Yes, without any evidence. We submitted evidence that there was plenty of analysis by PhDs with semiconductor manufacturing expertise. There were PowerPoint presentations, and this is in the record, given to Micron at a meeting in November 2018 that used 10 images of the Micron NAND product and mapped it to the claim elements of the three patents. Micron came back with their response in an email just at a high level. Our clients responded in February 2019 with PowerPoint decks rebutting what Micron had said. These 10 images are expensive. They were purchased, the record indicates, for $35,000 just for the Micron TEM image. This is not some fly-by-night operation. These are real allegations, and the Court considered none of that evidence. In fact, no evidence at all, to be fair to Micron. It didn't consider Micron's evidence either, just the allegations. First of all, that's not what the Idaho statute would even call for. It calls for a finding, and I believe Idaho's brief at footnote 12, I think it is. Didn't we, though, carve out in Globetrotter an exception and indicate the preemption doesn't apply if there's a clear provision of bad faith in the statute? That's for statements in the marketplace. Hunter Douglas and Dow and all of those cases are about conduct in the marketplace where states historically regulate. States do not historically regulate patent litigation, which is all that this case is about. It's about Katana's patent infringement. But why wouldn't the bad faith proposition that's articulated there apply to an assertion in a complaint? Why wouldn't it? Yes. Right, because what the standard indicates, and this was phrased, for example, in the Hunter Douglas decision at page 1335 and 1337, it's if a plaintiff bases its tort action on conduct that is protected or governed by Federal patent laws, then it's preempted. And in that case, they explain, talking about Dow, that the defendant's conduct in Dow is neither protected nor governed by Federal patent law. In the marketplace, a statement of assertion is protected by patent law if it's not in bad faith. But a statement that is governed by Federal patent law is preempted no matter what. You're saying that's the case with a complaint? With a Federal complaint, yes. If you're in front of a Federal agency or a Federal court and you make a statement, that is governed by Federal law. And that's why these cases emphasize over and over again that, hey, we're talking about statements in the marketplace. We're not talking about alleged abuse of process in front of Federal agencies like the PTAB or in Federal courts. So that's Abbott Labs. We're well into your rebuttal time, and you wanted to save some. Yes, Your Honor. I would like to reserve it. We'll give you three minutes for rebuttal. Thanks so much. Mr. Dufresne, you're sharing your time with Mr. Zarian. That's correct, Your Honor. May it please the Court. I want to pick up with Judge Schall's first question, which was about whether the statute is an anomaly. And we heard today that it's an anomaly because it applies to complaints. And that's not correct. As we explained in our brief, a whole host of these other state statutes apply to complaints in that they apply to communications as a whole. And among those, there's a large subset, 10 or more, that have specific carve-outs for civil actions asserting hatch-waxman claims. So if those other state statutes did not also include litigation, civil actions, and various complaints within their reference to communications, there'd be no reason for that carve-out. What about the attempt to distinguish Globetrotter on the basis that this Idaho law and, I guess, other state laws apply to complaints? Right. So I think, as I understand, the distinction is that there's some sort of difference between marketplace assertions and assertions in court. I guess there's, you know, like a refrain, cease and desist letter, as opposed to an actual complaint. Correct, yes. So there's no basis for that distinction in the governing law here. So Globetrotter walks through the history of the Norr-Pennington Doctrine very helpfully, and it talks about how that arose to protect First Amendment-protected petitioning activity. And it started out as petitioning activity before the legislature, seeking legislation. It was then extended to cover petitioning activity in front of a court, and then it was extended again to cover petitioning activity involving communications about a claim that could be brought in court, the kind of marketplace conduct that we're talking about. In all three of those contexts, the exception that comes with Norr-Pennington immunity turns on bad faith. There's no difference between a complaint or court proceedings, as opposed to what counsel called marketplace communications. They all have the same carve-out for bad faith communications or bad faith assertions, which is exactly what the Idaho statute goes to. Mr. Dufresne, what's your response on the jurisdictional issue that the panel discussed with opposing counsel? So as the court knows, we moved to dismiss this appeal entirely because we believe it's premature. It's an interlocutory appeal, and I think counsel focused on the Collateral Order Doctrine first, and there are several problems with that. First of all, the Collateral Order Doctrine requires that a determination by the district court be totally separate from the merits. But at the same time, counsel suggested in Longhorn's briefs that this court should take pendant jurisdiction over the entire dispute because the bond determination was inextricably intertwined with the merits of the dispute. So it's very hard to see how under those conditions the bond order that they're complaining about could be totally separate and apart from the merits of the case. In addition, I think the court discussed a little bit how there could be effectively unreviewable consequences later and the Cohen decision and the Supreme Court's follow-on swift decision explains to us that the instance where a court grants a bond, as has happened here, is not the kind of a thing that's effectively unreviewable. What the court was concerned about in Cohen was if the bond is denied and then the case goes all the way through and the party who is eventually entitled to recover is left holding the bag because there's no money there to collect. But if the bond is granted, there's no irreparable harm to the bond. If the bond wasn't needed, it can just be refunded. So I'd submit the collateral order doctrine does not apply here. If we don't agree with you, what about preemption? About preemption. So at the start, I want to just point out that Longhorn's brief in the opening brief seemed to argue that facial preemption should apply as a whole to the entire Idaho statute. I think they've walked that back in their reply brief. They said they're just focusing on as applied to complaints now. And I think they're also taking the position that the kind of marketplace assertions that Judge Stoll was asking me about would be okay to redress those under the statute. So there's no way that there could be no possible set of facts for the statute would be constitutional under that view. So I don't think we're talking about, I don't think full preemption is even on the table anymore. As to complaints specifically, the statute is not preempted for the reasons that I mentioned having to do with the Knorr-Pennington doctrine. It fits right into the exception for bad faith. And the statute also does not conflict with any of the three objectives of federal patent law, which the Supreme Court uses to talk about these preemption issues. It doesn't remove any incentives for any legitimate petitioning activity or monetization of patents. It doesn't have any effect on disclosure. And it, if anything, improves policing in the public domain by preventing assertions based on claims that, where there is no actual good faith basis to try to exclude somebody. What about the chilling effect? Four times estimated litigation costs. So that was a choice that the Idaho legislature made in crafting its statutes and allowing for damages up to that amount. I don't see that there's any legitimate basis to believe that that remedy is going to chill legitimate good faith patent assertion because it is limited to bad faith patent assertion. That includes both subjective and objective bad faith. So it seems a very large stretch to me to say that a party is going to be so worried about being held liable for engaging in objective and subjectively bad faith patent assertion that they will totally forego any kind of assertion. A party knows if they are objectively bringing a patent claim in bad faith. That's not a mystery. And it's also a high bar to prove. So it's difficult to prove these kind of cases. There has to be real bad faith proven by clear and convincing evidence. What about the argument that the bond is just based on allegations that complain as opposed to real evidence? So the district court received evidence from both parties, received briefing from both parties on that evidence, heard oral argument where the parties walked through that evidence, and the court made its decision on the bond based on that evidence. So I don't think there's any basis to think the district court made the determination based solely on allegations in the complaint based on that history. These are expired patents? That's correct, yes. Anything further? One other thing I'd just like to point out, if the court will indulge me, is that most of the complaint that I've heard about today has been focused on the bond and the potential stay of the district court action as some kind of impediment to actually pursuing a claim. To the extent the court has any problem with the bond itself, that's not a problem with the Idaho statute, which calls for the bond but doesn't include in its terms any consequence for nonpayment of the bond. The stay that the district court added was a discretionary choice by the district court as to what to do with that bond. So if the court is concerned about the stay in particular, that is not a problem with the statute and not a reason to impose any kind of preemption. Thank you. Let's hear from the State of Idaho. Mr. Zarian. Thank you, Your Honor. May it please the Court, we understand that there are significant jurisdictional questions in this case, but as the State of Idaho, our interest is in defending the constitutionality of the statute. So I'd like to only talk about the facial preemption argument, if that's okay. And I think on this point, we're very much singing from the same hymnal as Micron, in that we understand only that according to appellants, most of the statute is constitutional. I think there's no dispute about that under this Court's precedent about written demand letters and cease and desist letters. But what's at issue here is complaints and whether complaints can form the basis for civil liability under state law. And it's well established under Supreme Court precedent, it started with Knorr and Pennington and then California Motor Transports and professional real estate investors, there's a whole line of cases that Globetrotter walks through, that filings in court can be the basis for civil liability. And really, the understanding of this is that if you have an objective, a sham petition is what they call it, if you have something that's objectively and subjectively unreasonable, at that point, it's basically an abusive business tactic and you're not legitimately using the courts. And so there can be liability under the Antitrust Act or the B.E. and K. case talks about the National Labor Relations Act. You can't impose liability on this kind of conduct. And so Globetrotter takes this line of cases and says, well, under the First Amendment and under preemption, it talks about all the preemption doctrine that had gone on in the courts, in the Federal Circuit, and says this is going to be the standard for preemption and the First Amendment is objectively and subjectively unreasonable. And it doesn't mention marketplace activity in Globetrotter, that just says this is the standard for state law claims. There are threads of talking about the marketplace in some of the earlier cases. There was quite a few cases between 1998 and 2002 when Globetrotter decided. It's the Hunter-Douglas case and Dow and Zenith. But if you read Hunter-Douglas... You agree, though, that Globetrotter, the facts of Globetrotter are based on more of what you think of as a marketplace situation, right? That's correct, but Globetrotter actually had to extend from petition to pre-petitioning activity. So it almost assumed that petitioning activity is more of the heartland of what's protected by the First Amendment and dealt with that. But it said that we also want to protect pre-petitioning rights. So it's talking about the same body of case law that would apply to a federal complaint. And then in the Hunter-Douglas case, you see it talks about how there's two different types of state law claims that aren't preempted. And it talks about claims in the marketplace for bad faith, but it also talks about the Abbott Labs case and the Nobel Pharma case, and it talks about proceedings before the PTO that are sham proceedings or fraudulent proceedings. And this is... I heard my friend on the other side talk about how there's proceedings that are governed by federal law. And even in Abbott Labs and in Hunter-Douglas and in Dow, they're talking about this Abbott Labs case where it says, yeah, sham proceedings, you can impose liability. And I think what was going on before Globetrotter is that bad faith and sham petitioning, they were talking about different things. Where subjective bad faith is what they meant by bad faith. And then we talk about sham proceedings. It took a while for it to harmonize, but you don't see any of these statements about the marketplace... needing to be in the marketplace after Globetrotter. And by the time we get to the energy heating case, the court says state court claims based on enforcing a patent, including for tortious interference, are preempted by the federal patent laws unless the claim can show that the patent holder acted in bad faith. So by that time, it's understandable. It's just about enforcing a patent that can be in court and out of court. And it makes sense that that's how this would work. It's hard to see why the Patent Act says states can't impose liability for bad faith. You have a patent right to assert a patent, and if you threaten to assert it, then states can impose liability there. But if you actually assert it, states can't impose liability anymore. I can't imagine why the Patent Act would want to encourage bad faith assertions, sham proceedings, objectively and subjectively baseless claims in court. I don't see how that would further the acts of the Patent Act, or further the purposes of the Patent Act. There was this talk about chill, and maybe it's going to chill people from inventing in the first place, one of the purposes that the Supreme Court talks about in dealing with preemptions. But I think that's pretty, like Mike runs out, I think that's pretty far-fetched. The chill cases that are cited are usually about laws that get at good protected conduct and unprotected conduct. So the Tenth Circuit case they relied on that had a bond that you had to post if you were a fundraising consultant. All the fundraising consultants had to post that bond, even the ones who were acting in good faith, because they were trying to get at fraudulent conduct. And so that's a chill on good faith activity. But as Judge Stoll said earlier, this only gets at the bad activity, the unprotected activity, baseless litigation. I suppose there's a remote risk that a court might get the case wrong and something will be misclassified. But my two responses to that would be that, one, that risk already exists under Globetrotter. It could happen in a state tortious interference claim. And, two, that it doesn't seem like it's particularly heightened in these statutes. These statutes were all passed across the country in 30 different states 10 years ago, and this is the first time it's been to the Supreme Court. So I don't think there's a real chill that this is going to revolutionize patent law for these claims to still exist. I say I'm out of time. Without it, we'd ask that the Court refer. Thank you, counsel. Mr. Breedlove. Thank you, Your Honor. An objective of Congress is the uniformity of patent laws. This distinction between assertions made in a federal complaint versus marketplace activity is not something that we made up. If this is allowed, then every state could adopt a new attorney's fee scheme for their state for patent litigation. Idaho has a scheme where you just allege, you just allege bad faith assertion, and then you can have a counterclaim going after quadruple the estimated future attorney's fees of the accused infringer. This distinction is raised repeatedly in this Court's case law, talking about, in Dow, for example, distinguishing Abbott, the abuse of process claim at issue was based entirely upon bad faith misconduct before the PTO. However, the tort claim at issue here is premised upon bad faith misconduct in the marketplace. We see the tort, in this case, as based essentially on bad faith communications that interfere with contractual relations. It said at page 1478, the tort of intentional interference with contractual relations is a remedy of money damages for improper behavior by competitors in the marketplace. The tort at issue covers all types of commercial actors and does not single out patent holders for either increased deference or additional scrutiny. This statute does single out patent holders. It targets complaints and it attempts to regulate federal patent litigation. It attempts to regulate because these statements are governed by federal patent law. This is not a distinction that we made up. It said counsel called it marketplace misconduct. These previous cases, that's what this Court called it, was marketplace misconduct. Abbott Labs distinguished marketplace misconduct, Semiconductor Energy Lab v. Samsung, 204 F. 3rd, 1368, made the distinction. And I wanted to mention also the NRA Netflix antitrust litigation in the Northern District of California in 2007. Claims that are predicated on no more than bad faith misconduct before the PTO are preempted by federal patent laws. Conduct in front of the PTO is regulated by federal patent laws. In the same way, conduct in a federal pleading that's excluded from state court is governed by federal law. And so that's an important distinction. What should be required is marketplace misconduct that results in marketplace damages. If a person's damages are only the defense of the federal patent litigation, that's something that federal law deals with. And Idaho should not be heard to be trying to pile regulation on top of the federal scheme that already exists. And no state should. Because we really could have 50 states regulating patent litigation in different ways. Thank you to both counsel. The case is submitted.